And we'll turn to the last case on our day calendar, Feliciano v. Tillman. Thank you. Thank you. May it please the court, Casey Okole, New York, New York, for the appellant. Your Honor, this case concerns two principal issues. One is whether a district court may swassponte, without a formal motion being made, dismiss a person's claim, a plaintiff's claim, before the plaintiff had rested. And that was what happened here with respect to Elisa Feliciano. There are two different... She never went to the jury. Sorry? Never went to the jury. She never went to the jury. Feliciano never went to the jury. In fact, when it was dismissed from then till the end of the case, she didn't show up anymore. So that and it's there. The record shows that it was at the end. You will not see a formal motion made just before we rested. But that was at the stage that the judge, following a sidebar in which he had expressed the view that Mrs. Feliciano was deliberately lying. Mrs. Feliciano at the time was a 75-year-old cancer patient who testified through an interpreter. I know that she's sick and when... Of course, I couldn't speak Spanish, so I had to... Whenever I spoke to her, I spoke through somebody. So given that, I think that the judge... I submit that the judge invaded the province of the jury. Did you say there wasn't a motion filed? Did you say there wasn't a motion filed to take the case away as to her from the jury? Is that what you said at the beginning? There was no motion before we went, that's before we rested. There was none. There was no 50... You said A258. Our next motion is to dismiss the claim of Elisa Feliciano. Well, that is a motion at the end of the trial. That's at the end of the trial. In fact, if we were being technical, since they did not make a 50... Section 50A motion, that motion couldn't be made. But you can make a motion for a verdict notwithstanding the jury's decision, both at the close of the plaintiff's case and at the close of all the evidence. Yes, but it wasn't made at the close of the plaintiff's case. That's what I'm saying. So? There was none that was made. It should have been made. Again, because it wasn't made, she was dismissed at that point. I submit that it was prejudicial not only to her claim but to us. Let me explain one thing. For instance, this is... It would have been prejudicial, didn't you concede there were no physical injuries to her? Well, it's a civil rights case, so there is still a possibility that the mere fact of a violation of her civil rights will entitle her to be vindicated. It's an excessive force case, so you have to show more than de minimis injuries, right? I agree, but it's still... That deals with the issue of whether you get compensatory damages or not. If he was shot, the way she was shot, inside her own home, she wasn't committing any crime, and she was a cancer patient and fell and said, I felt pain, my buttocks ended on the floor. And that was never... Other than that in itself. But do you accept what Judge Joni just suggested, that the slightness of the injury goes to whether use of force was allowable? Because we have case law that says that the slightness of the injury does not preclude a finding that the force was objectively unreasonable. Well, that wasn't... Well, that was never articulated by the judge that he was dismissing because the force use was not objectively reasonable. Why did he dismiss it? He said it was de minimis? At the end, what he said was slight, I believe it's 258. Yeah, it's 258. He said, motion granted to dismiss on the failure to prove any injuries whatsoever and not only the misstatements and lies committed by the witness. Exactly. So on two grounds, I'm dismissing. So one of those grounds is there's no real injury here, right? Yeah, that is what he said here. But this was just restating what he had said earlier, but that was not recorded. He had said this once we closed our case without a motion from them saying that it was dismissed for all her lies. Did he say it in front of the jury? No, no, no, no. The jury left. Once the jury left, we started with a sidebar, really, where he said this is unbelievable, I don't believe this. So after the sidebar, then he said, listen, I could declare a mistrial, but that was not what he did. What he went on to do was to say I'm dismissing it because of all her lies. And then they put on the archives. That's not what he said. I just read to you what he said, right? No, no, no. A transcript mistake? Your Honor, that was at the end of the case. This dismissal, I mean, I don't know how else to put it. First of all, we had to rest. Before we rested, he had dismissed. He made a statement dismissing the case before we rested. Then they had the case. They had their case when they finished. That is where you have 258. They just repeated, essentially just made a formal motion at 258. Wait a second. On page 257, transcript page 359, you said we rest. You see that, that little box? Page 257, transcript page 359. Just one quick second. You said we rest. The court says, oh, everybody rests, which means no more testimony. Yeah, but that was at the end of the case. We had rested when we finished our case. That was recognized. It's there in the transcript. But it was after that that he made the ruling that I read. You see that, the next page? I see it. I see it. All I'm saying is that this was after the entire case was ended. But when we finished our case and he said subject, you rest, Mr. Okweli, subject to bringing in the police officers. But let me quickly touch something here. It's very disturbing that police officers would tell a different story to secure a conviction at a criminal trial and come to a civil case and give a completely different testimony and admit it on the record that in fact, oh, no, it was just some slight, I reviewed records, suggesting that they did not review records before they testified just enough in a way to secure a criminal conviction. Then when they were sued for civil rights violation, they turned around and changed. For instance, he admitted that he got the name Angel Feliciano from running the particulars of the vehicle that they saw in the compound. At the trial, he didn't know where he got the address from. I said, did he tell you also that his address was Ocean Avenue? He said, no, he didn't tell me that. Where did you get it? I don't know. But at the trial, civil trial, he admitted that he got it from the same running of the Angel. And if you see, he crossed out Angel on the actual exhibit that was presented in court and later wrote Hector. They claimed he told them that. All he told them was Mr. Feliciano. Then he, at the trial, at the civil rights trial, he admitted that the purpose of running the particulars of the vehicle that was not involved in anything that was sitting in the compound was to find out the true identity of Mr. Feliciano. He assumed that it was Mr. Feliciano's vehicle. And once he saw Angel and he had told him Feliciano, he put in Angel Feliciano. Now, it really is very disturbing. I mean, if you look at it, it's clear that they lied to secure a conviction claiming that he told them it was Angel Feliciano. Then after he had been convicted, they came to the civil case and said, no, it was somehow, yeah, I got it there. Essentially now walking away from the testimony that led to a conviction. I don't think that this court should allow that kind of travesty to stand. So I submit that Ms. Feliciano's case should have been allowed to go to the jury. And if it ended up that they awarded her nominal damages, so be it. But that her case should have been heard. But the judge prematurely dismissed it. And also as 258 will show, partially for all her lies, even though before that wasn't said when we finished her case. But it's clear that at the end of the whole case, he made another ruling in which he said, I don't want to misread. So on two grounds I am dismissing. Motion granted to dismiss on the failure to prove any injuries whatsoever. And not only that, on the misstatements and lies committed by the witness. So this is a case where the judge hijacked the function of the jury. And that should not be allowed. Thank you very much. I've given you some extra time. Ms. Willing. Thank you. May it please the court. I'm Assistant City County Attorney Arlene Zwilling. I represent Police Officer Kevin Thelman. It's very simple. The plaintiffs here do not meet the considerably high bar for this court to alter the outcome in the court below. What is the high bar that you're referring to? Well, with respect to several of the issues that the plaintiffs raise, it is an abuse of discretion standard. It's an abuse of discretion standard with respect to the denial of the Rule 59 motion and the denial of the application for attorney's fees. Let's talk about dismissing her case, Alyssa's case. Yes. The court went to the jury. Yes. The plaintiff actually is appealing from the denial of the Rule 59 motion with respect to that. So it would be an abuse of discretion standard. But just hold on one second. Both Mr. Feliciano and Mrs. Feliciano testified that Officer Thelman had pushed Mrs. Feliciano to the floor. Is that right? Was there such testimony? There was somewhat of a conflicting testimony. No, no. I'm not asking whether it was conflicting. I'm just asking whether there was such testimony. Yes. Mrs. Feliciano testified. Well, Mr. Feliciano and Mrs. Feliciano testified. Yes. Testified that Officer Thelman pushed her and she fell to the floor. Just follow me on that. I'm just asking. I'm a simple person. Why isn't that enough to avoid dismissal of Mrs. Feliciano's claim? Mrs. Feliciano did not claim that she was in any way injured. Based upon the testimony. No, I didn't ask that. That's not the question I asked. I had asked whether there was testimony by both Mr. Feliciano and Mrs. Feliciano that Officer Thelman had pushed Mrs. Feliciano to the floor. I'm not going into injury. Was there not testimony on that score? Yes, Your Honor, there was. Why isn't that enough to avoid dismissal of her claim? Because an excessive force claim requires more than the use of de minimis force. What's the authority for that? There are a number of cases cited in . . . I have a question pending. Yes, go ahead. There are a number of cases which we cite in our brief. In point one of our brief, Gutierrez, the primary one being Gutierrez versus the city of New York, which was the case that Judge Wexler cited in his decision upon the Rule 59 motion. In addition to Gutierrez, there is a whole string of cases to that effect, that an excessive force claim requires the use of more than de minimis force, and although serious injury is not required, more than de minimis injury would be required. I notice that all of these authorities are to district court decisions. There's nothing wrong with that. Each of us has been a former district judge, so we have the highest regard for district judges, but there's no apparent authority for your proposition from the Court of Appeals, which would give us some indication of what the law of the circuit is. I suppose it's your position that these cases reflect the law of the circuit or cite the law of the circuit, but you haven't given us the benefit of any such citations. I am not aware of any cases from this honorable court which squarely address that issue and decide it. I do believe there have been a number of cases where it has been noted parenthetically or in passing that more than de minimis force and more than de minimis injury is required, but I don't believe there is a precedent that is precisely on that issue. Wilkins v. Gotti from 2010, where they say the district court, to conclude as the district court did here, that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry, and the core inquiry was whether he suffered a non-trivial use of force that was applied maliciously and sadistically to cause harm. That is, you don't have to be really injured if the force was excessive. That's what the Supreme Court says. Yes, Your Honor, but in this case, the plaintiff claimed no injury, and there is . . . She said she had back pain. Her testimony, I believe, was that she felt pain as she hit the floor, not that she had any pain that persisted for any amount of time. Now, with respect to Alyssa's claim that the dismissal was not memorialized by the court, as Your Honors have noted, it was clearly in the transcript. You didn't move to dismiss this. This was the judge who did it sua sponte, wasn't it? No, Your Honor, we did move to dismiss it at page 257 of the appendix. We moved to dismiss Alyssa's claim on two grounds, both for failure to prove a private case, lack of evidence, and on the basis of qualified immunity. We're at page 257, appendix 257, which has four different pages. Where do we look? It would be page 360, which is in the lower right-hand corner. And that was you. Of course, you were counsel of record. Yes, I was trial counsel. So you said the first offense motion is to dismiss the Mornell claim. And continuing from there a little further down, it is stated the next motion is to dismiss the claims against officers Fann Gray and Giganti. Right. And for the time being, the court reserved decision on that. And then in due course . . . And moving along further, at the top of page 361, our next motion is to dismiss the claim of Alyssa Feliciano. Right. And then there's the text that was quoted by Judge Droney. Yes, Judge Wexler, yes. No, but Judge Droney here quoted Judge Wexler. I'm sorry. Judge Wexler is no longer with us. Judge Droney is. I misheard. I thought your Honor had said Judge Hurley. And Judge Hurley is certainly not here. So is Aguilar. Yes. So, Mrs. Feliciano testified that she felt pain in her lower back, didn't she? At the moment she fell to the floor. Yes. And nothing thereafter? Is that was the testimony? Yes. She gave no testimony as to any pain or discomfort or injury after that moment. So was that a question of failure to ask or what? I mean, did her lawyer not ask her if she continued to feel pain? Your Honor . . . The case, the record is what it is. Yes. The plaintiff had her day in court. She had her opportunity to fully describe . . . Wouldn't it have made sense after this whole trial to let this go to the jury too? I mean, the jury obviously wasn't in love with Mr. Feliciano. They gave him a dollar in damages. What makes a judge think that it's smarter to just take it away from the jury after listening to testimony for how many days? How many days was this trial? I believe there was two days of testimony. Two days of testimony and right before it's supposed to go to the jury, the judge throws it out, right? Yes, Your Honor, but again, we believe that that was not an abuse of discretion because of the minimal fiscal contact which was denied by Officer Thoman. Well, yes, he denied that he shoved her to the floor? Yes, he denied that. But this came up too to some extent about the testimony after she said she felt some harm, which she felt. Then she was asked, did she seek any medical treatment? I'm on A-222. There was an objection, and you said the plaintiff testified in her deposition that she sustained no injuries and got no medical treatment. But the court said, okay, he can bring it out. Do you remember that? A-222, page 218 of the transcript. Yes, I see that, Your Honor. It's accurate, right? Yes. Yes, your testimony is certainly accurate, and then the plaintiff is asked on direct examination by her attorney about the treatment she got. Would you please go to the microphone? Yes. And she refers only to mental health treatment. She does not . . . That she went to a psychologist. Yes. She does not mention any medical care received for physical injuries. She had mental health issues based on . . . She had a mental health issue as a result of being pushed to the floor. We believe that to the extent that more than de minimis injury is necessary, it must be a physical injury and not a mental health injury. Is there a law that says it must be a physical injury after the police come in on a no-knock warrant? Do you have cases . . . That is not an excessive force claim, Judge. Do you have cases that says that there has to be physical injury? On an excessive force claim, I believe some injury, more than de minimis injury is required. That's all they're suing for is excessive force at this point. That was all the case was about. That was Alyssa's only claim, yes. Moving on, we also believe that the district court was within its discretion in denying Hector's motion for a new trial on damages. Now, the court below denied that branch of the Rule 59 motion under Atkins versus City of New York. Now, it's not completely clear whether Hector is challenging the jury's decision to award only nominal damages and no . . . as opposed to compensatory damages, but we believe that under the cases cited in our brief, as well as Aly versus Kip, which was decided by this court earlier in this year, in which Your Honor, Judge Cabranes wrote the decision, a jury has the prerogative to award an excessive force plaintiff only nominal damages if it so chooses. And moreover, as Ellie also clarifies, the jurors are not required to accept one or the other party's competing version of the facts in total, but have the discretion to accept bits of testimony and to make reasonable inferences from that testimony that they, in their judgment, feel they should credit. And likewise, for a reviewing court, examining the determination of a jury. Thank you, Ms. Wood. I gave you some extra time, as well, to balance the time given to Mr. Okole, who has reserved some time now for a rebuttal. I'll use my rebuttal time to invite the court's attention to A48, 248, where the court said, let's break for lunch. We'll resume at 1 o'clock. Don't discuss the case. Jury list the room. Then 250. Bear with me, Mr. Okole. Page A248, which of the... No, no, A48. A48. A48. Yes, and then the 248, which is the lower right-hand corner of that page. All right. Hold on one second. Where do you want us to look on A48? It's just to invite the court's attention to there was a lunch break. And what are we to draw? What conclusion are we to draw? Then 250, the court says, all right, bring in the jury. Plaintiff has rested. Then the jury comes in. The court says, be seated. The plaintiff has rested, and the defendant will now call witnesses. It's to explain the fact that before that, it was in between that the court made the first decision in dismissing Elisa Feliciano's case. So the one that you see on the record was actually, shall I call it a second dismissal, as it were, after the close of the entire case. I just wanted to bring that out, that when it was first dismissed, all he said was because of all her lies. He was actually furious. And why it's not in the record, I don't know. But page 258 sort of reflects that, yes, indeed, he made reference to lies, the witness's lies. Then one other point that counsel brought up with those lies he's talking about was she said she had not testified at his criminal trial. Isn't that what got him upset, the district judge? She said, I didn't testify at his criminal trial, and clearly she did. Yes, that's not . . . In fact, when I redirected her, she admitted that she did, which leads me to believe that in the course of the translation, something must have . . . I mean, I don't know. I mean, I don't speak Spanish. Something must have gotten missing in the translation. But when I redirected her, I said, you remember the court where your son was, your daughter? She said, yeah, I remember. You testified there? Yes. So when I took her through things to make her realize what we were talking about, somehow she thought we were just talking about that case. If you look at it, it's a little bit confused. But once I brought to her attention the fact that her son Robert, there was a time she went to a court where Robert was, Minerva was, and she said, yes, I testified. That was the trial. Once it became clear to her, she admitted it. But at the time she was being questioned, it seems to me that somehow this was lost in translation. She did not understand that that was what it was. And that's where the judge thought she was lying? That's correct. All right. Thank you very much, Mr. Akoli. We'll reserve the decision, and we are adjourned. Thank you.